TOWN OF LUDLOW *v.* TOWN OF LANDGROVE.

*Pauper. Settlement.*

The pauper in question lived with her brother in Landgrove for more than seven years as a member of his family, he furnishing her with her support, she doing sufficient service for him to compensate him for such support. She was not "what is called bright," but was capable of doing the coarser work about the kitchen, knitting, sewing; could take care of small children, read some, was accustomed to attend church and behaved with propriety, but if left to look out for herself she was not capable of taking care of herself by seeking employment, and making contracts, and providing herself with places to live, and with proper clothing and support, nor of exercising an intent of remaining or moving to and from different places except as she was controlled by those who had care of her. *Held,* that her residence in Landgrove was of such a character and under such circumstances as to give her a legal settlement in that town, under the statute.

APPEAL from an order of removal of a pauper. Plea, that the town of Landgrove was not at the time of making the order the legal settlement of the pauper, Reuhama Martin. Trial by the court, by consent of the parties, December term, 1868, BARRETT, J., presiding.

It was agreed that the pauper's legal settlement was in Landgrove at the time of said order—provided she had sufficient mental capacity to enable her to gain a legal settlement in her own right by more than seven years' residence. The court found as follows:—" The pauper is the daughter of Jonathan Martin, of Chelsea, in this state—was born in Chelsea on the 16th of October, 1805. Her father died in Chelsea some time before 1830, leaving his wife surviving. The pauper lived with her father and mother, and was taken care of by them during her father's life, and

13

lived with her mother, and was taken care of by her in Chelsea till about 1832 or 1833, when she, with her mother, went from Chelsea to Plymouth to live with, and betaken care of by, Joseph Martin, a brother of the pauper, who was under obligations to support them. And she so lived with him for some seven or eight years, when he removed from Plymouth: and thereupon, by his procurement, the pauper went to live with her brother, Jonathan F., in Landgrove, and continued to live with him in said town for more than seven years, and till he removed to California ; whereupon, by his procurement, she went to live in the family of Mr. Gates, in Ludlow, on the terms that Gates should have, as compensation, $20 per year, and such service as she might render in the family. She was so living with said Gates when this order was made. Her mother died some time while in Joseph's family, as aforesaid, in Plymouth.

" During all the time of her living with her mother, and Joseph, and Jonathan, and down to the present time, the pauper was not what is called bright. During the time of her living in the families of Joseph, and Jonathan, and others, she was taken care of and provided with every thing by way of support—working about the coarser kitchen work, and knitting and sewing some, and being handy about taking care of small children, and on the whole doing sufficient service to compensate for her support. She could read in easy reading, but not long hard words. In conversation she appeared broken and child-like. She was accustomed to attend church and behaved with propriety. If left to look out for herself, she was not capable of taking care of herself by seeking employment, and making contracts, and providing herself with places to live, and with proper clothing and support, nor of exercising an intent of remaining or moving, in, and to, and from different places, except as she was controlled by those who had care of her. The residence by which her settlement was gained, in Landgrove, if gained, was that with her brother Jonathan, above stated. Contrary to the opinion of the court, judgment *pro forma* was rendered that the pauper was duly removed." Exceptions by the defendant.

*Deane & Seaver*, for the defendants, cited *Brownington* v. *Charleston*, 32 Vt., 411 ; *Bristol* v. *Rutland*, 10 Vt., 574 ; *Danville* v. *Putney*, 6 Vt., 512 ; *Manchester* v. *Rupert*, 6 Vt., 291 ; *Sutton* v. *Cabot*, 19 Vt., 522 ; *Woodstock* v. *Hartland*, 21 Vt., 563.

*Sewall Fullam* and *W. H. Walker*, for the plaintiffs.

The opinion of the court was delivered by

PIERPOINT, C. J.   In this case it is conceded that the pauper's legal settlement was in the town of Landgrove, and that she was duly removed, provided she had sufficient mental capacity to enable her to gain a legal settlement by seven years' residence.   It appears that she lived with her brother in Landgrove for the period of seven years as a member of his family, he furnishing her with her support, she doing sufficient service for him to compensate him for such support.   She was not " what is called bright," but was capable of doing the coarser work about the kitchen, knitting, sewing, "was handy about taking care of small children," could read some, was accustomed to attend church, and behaved with propriety, but if left to look out for herself, she was not capable of taking care of herself by seeking employment and making contracts, and providing herself with places to live, &c., " nor of exercising an intent of remaining or moving in, and to, and from different places, except as she was controlled by those who had care of her." · From this finding of the court it is apparent that she was not an idiot, or *non compos*, but was simply a person of weak intellect, one that would naturally rely upon and be influenced and controlled by her friends, and although she may not have had sufficient mental power to contend successfully with the stronger will of others, yet she evidently had sufficient mental capacity to have a choice and a desire as to her place of residence, and she would naturally choose to reside with her friends, who would take care of her, and desired that she should.

There is nothing in the case to show that while she resided in Landgrove she did not do so freely, voluntarily, and of her own choice.   That she acted under the influence of her friends may readily be supposed, but the fact that she did so constitutes, of itself, no sufficient reason why such a residence, for the required time, should not give her a legal settlement.   The court below have not found that she was incapable of forming and having an intention, or choice, as to her place of abode, but that in the exercise of such intent she would be subject to the control of her friends or those who had charge of her.   There is nothing in the case to show that in residing in Landgrove she was acting under

any compulsion or restraint, or against her wishes.    In this respect this case differs from that of *Brownington* v. *Charleston*, 32 Vt., 411, and as she was not an idiot, it differs from *Ryegate* v. *Wardsboro*, referred to in that case.

Upon a consideration of all the facts found by the court below we are satisfied that the residence of the pauper in Landgrove was of such a character, and under such circumstances, as to give her a legal settlement in that town within the meaning of our statute, and that the judgment of the county court was correct.

The judgment of the county court is affirmed.