CHARLES ADAMS, JR. *vs.* INHABITANTS OF IPSWICH.

Essex. Nov. 23, 1874. — Jan. 9, 1875. AMES & DEVENS, JJ., absent.

The husband of a pauper had a derivative settlement in a town from his grand-father, acquired under provisions of law in force prior to February 11, 1794. The father of the husband had also resided in the town for ten years together, and paid taxes there for five years, while the husband was a minor. Neither the husband, nor the pauper after his death, had complied with the conditions necessary to acquire a settlement in their own right. *Held*, that the pauper had a legal settlement in the town.

The transfer, authorized by the Gen. Sts. *c.* 71, § 7, of an inmate of a state lunatic hospital, from that institution to another, is properly made under the authority of the original mittimus.

The right of the Commonwealth to recover from the town of a pauper's settlement money paid out of the treasury for his support at a state lunatic hospital under the Gen. Sts. *c.* 73, § 24, and the St. of 1862, *c.* 223, § 11, is not affected by the St. of 1870, *c.* 105.

The right of the Commonwealth to recover from a town money paid for the support of a pauper at a state lunatic hospital is not limited by the fact that the town had no notice that the pauper was chargeable to it, or of his commitment to the hospital.

Under the Gen. Sts. *c.* 155, § 12, the right of the Commonwealth to recover from the town of a pauper's settlement money paid for his support at a state lunatic hospital is limited to such support as has been furnished within six years previous to the commencement of the action, and is not extended by ignorance of the fact of settlement.

CONTRACT by the treasurer of the Commonwealth to recover the amounts paid by the Commonwealth to the Lunatic Hospital at Northampton, for the support of Nancy Smith, an insane pauper, from June 10, 1862, to October 1, 1870. Writ dated July 14, 1871. Answer: 1. A general denial; 2. The statute of limitations.

The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on a statement of facts, in substance as follows:

The accounts charged in the declaration were paid by the treasurer of the Commonwealth to said hospital at the dates mentioned, and under the acts and resolves referred to, as follows: May 24, 1863, to October 1, 1863, St. 1862, *c.* 223, § 11; October 1, 1863, to January 1, 1864, St. 1863, *c.* 240, § 9; January 1, 1864, to January 1, 1865, St. 1864, *c.* 138, § 1; January

1, 1865, to January 1, 1867, Res. 1865, *c.* 16; January 1, 1867, to October 1, 1870, Res. 1867, *c.* 38.

Nancy Smith was married in 1837 to Walter Brown, Jr., who died in 1838 or 1839, and never complied with or met any of the conditions which would have given him a settlement in his own right; and Nancy, after the death of her said husband, never complied with or met any of the conditions which would have given her a settlement in her own right. Walter Brown, Jr., had a derivative settlement in Ipswich from his grandfather, Stephen Brown, which was acquired in that town under the laws in force prior to the statute of 1793. Walter Brown, Sen., the father of Walter, Jr., became of age in 1809, and died in 1863. He lived in Ipswich during that interval, ten consecutive years, and paid taxes there for five of those years, prior to Walter Brown, Jr.'s attaining his majority.

Nancy Smith was committed to the lunatic hospital, at Taunton, by the judge of probate of Bristol County in 1856, as a person having no known settlement. She was removed to the hospital at Northampton in 1862, by the Alien Commissioners of the Commonwealth, under the provisions of the Gen. Sts. *c.* 71, § 7. The records of the Taunton hospital show that Nancy was discharged to the Alien Commissioners, but there was no warrant, mittimus or other documentary authority for her removal, or for placing or detaining her in the hospital at Northampton. No notice whatever was given to the town of Ipswich that Nancy was in the hospital, or that that town was chargeable with her support, by either the hospital or the place of her residence, at the time she was placed in the hospital at Northampton; and no such notice was given to the town, or demand of payment made upon it, until May 24, 1869.

If upon these facts the plaintiff is entitled to recover, judgment is to be entered for such sum as the court shall find the defendant liable for under the statutes above mentioned; otherwise judgment for the defendant.

*J. Willard*, for the plaintiff.

*C. A. Sayward*, for the defendant.

WELLS, J. The pauper had a settlement in Ipswich; and that settlement still continues, if it has not been defeated by the St. of 1870, *c.* 392, § 2. She derived it from her husband,

through an original settlement acquired by his father in that town, unless its acquisition in that mode was prevented by the existence of a previous settlement, which his father derived from his grandfather, by virtue of provisions of law in force prior to February 11, 1794. If the older settlement prevented the subsequent acquisition of the more recent one, the former is preserved by the exception in the St. of 1870. *Bellingham* v. *Hopkinton*, 114 Mass.    . In either alternative the pauper is shown to have a present settlement in Ipswich.

She was properly committed to the lunatic hospital at Taunton; and from there transferred to the hospital at Northampton in accordance with the provisions of the Gen. Sts. *c.* 71, § 7. There was a change of the place, but not of the legal authority for the custody of the lunatic pauper. It was a continued maintenance of the same custody to which she had been committed in due form. No new mittimus was required. The statutes gave all the authority requisite for her transfer and subsequent detention at Northampton, under the original mittimus.

There has been no repeal of the statute authorizing the recovery of these expenses from the town of the pauper's settlement. The St. of 1870, *c.* 105, which is relied on as a repeal, merely changes the rate of compensation, and repeals acts or parts of acts inconsistent therewith. Such general language can have no effect beyond the necessary and natural result of the change which the new statute effected in the previous provisions of law relating to the subject matter of its direct provisions. The right of recovery given by the Gen. Sts. *c.* 73, § 24, and the St. of 1862, *c.* 223, § 11, is not inconsistent with the new provisions made by this statute. It is applicable to the liability, and is not affected by changes, from time to time, made in the rate by which the extent of liability is to be measured. The mention, in the St. of 1870, *c.* 105, of the mode of remedy, is not the provision of a new remedy, nor a repeal or change of the existing remedy. It was probably intended to indicate that the compensation then provided for should be recovered in the mode authorized by the law as it already existed; which would have been the construction if this clause had not been inserted. *Cummington* v. *Wareham*, 9 Cush. 585, 591.

The right of recovery in behalf of the Commonwealth is not governed by the provisions regulating claims between different towns. It is not limited by reason of want of notice.

But there is nothing in the nature of the claim, nor in the facts of the case, to take it out of the usual operation of the statute of limitations. The cause of action arose at the time the support was furnished. Ignorance of the fact of settlement makes no difference in the legal right; and does not bring the claim within the exceptions to the statute of limitations. Gen. Sts. *c.* 155, § 12. *Jennison* v. *Roxbury*, 9 Gray, 32. For the amount of the charges for support within six years of the date of the writ, there must be *Judgment for the plaintiff.*