WASHINGTON COUNTY V. MAHASKA COUNTY.

1. **Domicile:** EFFECT OF INSANITY. Where a person removes to a county with the intent to reside there the domicile thus acquired is not affected if he afterward, and before he acquires a legal settlement, becomes insane, and his insanity will not prevent his acquiring a settlement.

2. ————: STATUTE OF LIMITATIONS: COUNTY. The cause of action for the support of a pauper arises when the support is furnished and the operation of the statute of limitations is not suspended by the ignorance of the county furnishing it that the pauper is chargeable upon another county.

*Appeal from Mahaska Circuit Court.*

FRIDAY, OCTOBER 19.

ACTION to recover for the support of a pauper. The cause was tried by the court and a finding of facts made, which finding was in substance as follows:

The pauper, Mrs. Mary A. Harrison, resided in Mahaska county, Iowa, with her husband, continuously for about twelve years prior to November 3, 1868. On that day her husband, designing to desert and abandon her and his children, sent them to Washington county, Iowa, pretending that he would follow them in a few days, and that they would then live in Washington county. Mrs. Harrison and her children reached their place of destination in said county November 4, 1868. The husband did not follow, and his residence is unknown. Soon afterward Mrs. Harrison was taken insane, and on the 28th of November, 1868, upon an inquisition, she was found insane, and on the 2d of December, 1868, was committed for treatment to the Hospital for the Insane at Mt. Pleasant, Iowa. There she remained at the charge of Washington county until September 30, 1874, and during that time the county paid for her treatment $1,393. On her return she was placed in the county poor-house until June 30, 1875. The board of supervisors had no knowledge of the legal place of settlement of Mrs. Harrison until after her return from the hospital. On the 10th day of September, 1875, they served

on her a notice to prevent her from acquiring a legal settlement in Washington county, and another notice on the 6th of September, 1876. In June, 1875, the proper officers of Washington county gave notice to the proper officers of Mahaska county that Mrs. Harrison was a pauper and receiving aid from Washington county; that Mahaska county was properly chargeable with her support, and that they requested her removal there. In reply to such notice Mahaska county, within the time required by law, served a notice of its design to contest the claim. In June, 1875, a bill of payments made by Washington county on account of Mrs. Harrison, duly certified, was presented for payment to Mahaska county, and payment refused. Judgment for defendant. Plaintiff appeals.

*Patterson & Rheinhart*, for appellant.

*M. E. Cutts*, for appellee.

ADAMS, J.—I. A married woman, abandoned by her husband, may acquire a settlement as if she were unmarried.

1. DOMICILE: effect of insanity. Any person having attained majority, and residing in any county of the State one year without being warned to depart from the county, acquires a settlement in such county. Code, section 1352. Mrs. Harrison was evidently abandoned by her husband, and while abandoned commenced residing in Washington county, November 4, 1868. She was not warned to depart from the county until more than a year thereafter; but she was taken insane before the expiration of a month, and was removed to the Hospital for the Insane, in Henry county, and remained at such hospital until more than a year had elapsed. The question presented is, whether her insanity and absence from Washington county, in the hospital in Henry county, prevented her from acquiring a legal settlement in Washington county, her residence having been commenced in the county prior to her insanity and removal, and no warning having been served upon her to depart.

It is evident that no length of time spent by her at the hospital would give her a residence in Henry county. She did not, then, in any legal sense, commence residing in Henry

county. By reason, then, of her removal to that county, no interruption of her residence in Washington county took place. The case is not different from what it would have been if she had been treated at the expense of Washington county, within the county. In *Mill Creek v. Miami*, 10 Ohio, 375, the overseers of the poor of the plaintiff township removed a pauper after his residence had commenced in the township but no settlement had been acquired, to a hospital at Cincinnati, where he remained thirteen months. The court held that he must, in law, be considered as actually residing in the plaintiff township, and as having gained a settlement therein. Such, undoubtedly, is the rule in regard to a pauper who is sane.

We have, then, simply to inquire whether the question of the settlement of a pauper is affected by his insanity. In *Chicopee v. Whately*, 6 Allen, 598, the question arose as to whether one Graves had acquired a settlement in the town of Chicopee, by residing there ten years, the statutory period. It appears that after he commenced residing there he became insane. Upon the trial in the superior court the plaintiff asked the court to instruct the jury that if Graves became insane before the completion of the ten years' residence in Chicopee, and remained insane thereafter, he could not acquire a settlement there, although he might not have been insane at the time of his removal. The court refused to so rule, and instructed the jury that, "if Graves, being capable of choosing a residence, went to Chicopee with the intent to reside there, the domicile thus acquired in Chicopee would not be changed or suspended if he afterward became insane, and such insanity would not prevent his gaining a settlement." Upon appeal the ruling was held to be correct. In *Pittsfield v. Detroit*, 53 Maine, 442, KENT, J., said: "It has been settled that a person becoming insane may gain a settlement by a residence commencing when sane." The same rule is recognized in *Machias v. East Machias*, 33 Maine, 427, and in *Auburn v. Hebron*, 48 Id., 332. See, also, *Buckland v. Charlemont*, 3 Pick., 173; *Ludlow v. Landgrove*, 42 Vt., 137; *Concord v. Rumsey*, 45 N. H., 423.

II. Whether the defendant became liable to the plaintiff for the money expended on account of the pauper prior to the

time she acquired a settlement in the plaintiff county, we need
2. ——: stat- not inquire. The defendant pleads the statute of
ute of limita-
tions: county. limitations, and we think that a sufficient answer.
The account is not a continuous one, as no part of the charge
since the settlement was acquired is valid; nor is it sufficient
for the plaintiff to say that the liability of the defendant was
not discovered until a few weeks before the suit was com-
menced. In *Adams v. Ipswich,* 116 Mass., 570, an action was
brought to recover for the support of a pauper. The statute
of limitations was pleaded, and the court said: "The cause
of action arose at the time the support was furnished. Ignor-
ance of the fact of settlement makes no difference in the legal
right."

The judgment of the Circuit Court must be

AFFIRMED.

SEEVERS, J., having been of counsel, took no part in the
determination of this case.