INHABITANTS OF SHREWSBURY vs. CITY OF WORCESTER.

Worcester.    September 30, 1901. — October 18, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Pauper*, Transfer of pauper lunatic, Settlement.

The power given by St. 1888, c. 69, to the State board of lunacy and charity, to transfer any pauper lunatic from a State charitable institution or lunatic hospital directly to the asylum for insane at Tewksbury, is not limited to the transfer of any class of pauper lunatics although the resolves under which the buildings at Tewksbury were erected speak of them as for "harmless and incurable insane."

Upon the issue whether a man had acquired a settlement in a certain city, it appeared, that by a continuous residence there of more than five years and paying a poll tax assessed to him each year he had acquired a settlement under Pub. Sts. c. 83, § 1, cl. 5, unless during the time he had received relief as a pauper within the meaning of § 2 of the same chapter. He had always supported himself and his family, except that he had been unable to maintain his wife in the asylum for insane at Tewksbury to which she was transferred in 1888 by the State board of lunacy and charity, under the authority given by St. 1888, c. 69, from the Worcester Lunatic Hospital to which she had been committed in 1879. Pub. Sts. c. 83, § 3, provides, that "No person who actually supports himself and his family shall be deemed to be a pauper by reason of the commitment of his wife, child, or other relative to a lunatic hospital or other institution of charity, reform, or correction by order of a court or magistrate, and of his inability to maintain such wife, child, or relative therein." *Held*, that the transfer under St. 1888, c. 69, did not put an end to the original commitment but merely changed the place where the lunatic was kept, and that the new place equally with the old was a lunatic hospital and an institution of charity; therefore that the husband was not prevented from gaining a settlement by his inability to support his wife in the asylum.

CONTRACT to recover from the city of Worcester $438 paid by the town of Shrewsbury to the Commonwealth for the support of Margaret Hogan at the asylum for insane at Tewksbury, now part of the State Hospital, from October 1, 1897, to September 30, 1900. Writ dated December 28, 1900.

In the Superior Court, the case was heard upon agreed facts by *Gaskill*, J., without a jury. The judge found and gave judgment for the plaintiff; and the defendant appealed. The facts are stated in the opinion of the court.

*A. P. Rugg & E. I. Morgan*, for the defendant.
*W. Thayer & H. W. Cobb*, for the plaintiff.

BARKER, J. The defendant contends that the husband of the woman for whose support at the State Hospital from October 1, 1897, to September 30, 1900, the plaintiff asks reimbursement has no settlement in Worcester. He has lived there continuously since October, 1891, and has paid a poll tax assessed to him there in each year, thus gaining a settlement there before 1897, unless during the time he received relief as a pauper. Pub. Sts. c. 83, § 1, cl. 5 ; § 2. His wife has been insane since 1879, when she was committed to the Worcester Lunatic Hospital, where she remained until July 14, 1888, when she was transferred to the institution now known as the State Hospital (St. 1900, c. 333) by order of the State board of lunacy and charity under powers given by St. 1888, c. 69. She has remained in that institution since her transfer and her support there has been paid by the town of Shrewsbury, in which at the time of her transfer her husband had his settlement. He has always supported himself and his family, except that he has been unable to maintain his wife in the institution to which she was transferred in 1888.

Our law is that " No person who actually supports himself and his family shall be deemed to be a pauper by reason of the commitment of his wife, child, or other relative to a lunatic hospital or other institution of charity, reform, or correction by order of a court or magistrate, and of his inability to maintain such wife, child, or relative therein." Pub. Sts. c. 83, § 3.

The institution to which the wife was transferred in 1888 was at first a ward of the State almshouse at Tewksbury. It comprised a building erected under the provisions of Res. 1864, c. 80, and an addition erected under the Res. 1871, c. 77, and before February 29, 1888, was known as the Asylum for Insane at Tewksbury. St. 1888, c. 69. By this statute it continued to be used as a ward of the almshouse but the State board of lunacy and charity was given power to " transfer any pauper lunatic from a state charitable institution or lunatic hospital directly to " it. The power so given is not limited to the transfer of any class of pauper lunatics, although the Resolves under which the buildings were erected speak of them as for the " harmless and incurable insane." It is a power of transfer merely and does not put an end to the original commitment, but merely changes the place where the lunatic shall be kept. The new

place equally with the old was a lunatic hospital, and an institution of charity. The insane woman was confined there in continuation of the same custody to which she was first committed by order of the authorities of the Commonwealth. *Adams* v. *Ipswich*, 116 Mass. 570. Therefore the case of the husband is within the provisions of Pub. Sts. c. 83, § 3, and he was not prevented from gaining a settlement in Worcester by his inability to support his wife in the asylum.

*Judgment affirmed.*