EDWARD S. BRADFORD *vs.* CITY OF CAMBRIDGE.

Suffolk.    January 7, 1907. — March 6, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Pauper.    Insane Person.    State Asylum for Insane Criminals.*

The State Asylum for Insane Criminals at Bridgewater, established by St. 1895, c. 390, is to be regarded as a part of the system adopted by the Commonwealth for taking care of its insane rather than as a part of the system adopted by it for taking care of its criminals, and the general provision of R. L. c. 87, § 79, in regard to the payment by cities and towns of the charges for the support of insane persons having known settlements in this Commonwealth applies to those supported in this asylum.

Under R. L. c. 87, § 79, the treasurer and receiver general of the Commonwealth can recover from a city where an insane pauper has a settlement the charges for the support of such pauper in the State Asylum for Insane Criminals at Bridgewater, although such pauper had been convicted of a crime for which he was serving a sentence when he was adjudged insane and was removed to the asylum.

The provision of R. L. c. 225, § 111, that the expense of supporting a State prison convict who is committed to a State insane hospital shall be paid by the Commonwealth, does not apply to a claim for the support of a State prison convict in the State Asylum for Insane Criminals at Bridgewater during a period beginning after his sentence at the State prison had expired.

The provision of R. L. c. 225, § 111, that "the expense of supporting a prisoner who is removed from a jail or house of correction to the State farm shall be paid into the treasury of the Commonwealth by the county from which he is removed," has no application to the expense of supporting a prisoner transferred to the department of the State farm known as the State Asylum for Insane Criminals.

In an action by the treasurer and receiver general of the Commonwealth under R. L. c. 87, § 79, to recover from a city where an insane pauper has a settlement the charges for his support in the State Asylum for Insane Criminals at Bridgewater, if any proof of notice to the defendant of the transfer of the pauper to the asylum is necessary, proof that bills for his support in the asylum were rendered quarterly to the defendant beginning from the date of his transfer to the asylum and were received by the defendant without objecting to such support shows that the bills were accepted by the defendant as a sufficient notice and constituted a waiver of any right to a more formal notice.

MORTON, J.    This is an action of contract by the treasurer and receiver general to recover of the defendant in as·many different counts for the support at the State Asylum for Insane Criminals at Bridgewater of nine insane paupers all of whom, except one whose support is declared for in the second count,

had been convicted of various crimes, and had been committed to different penal institutions, from which, during their respective sentences, after having been duly adjudged insane, they were removed to the asylum at Bridgewater. In two instances the paupers were transferred from the Worcester Insane Hospital to which they had been previously removed. But no point is made of that by the defendant. The case was heard on agreed facts by a judge of the Superior Court, sitting without a jury, and the judge found for the plaintiff for the full amounts claimed in all of the counts except the eighth and ninth. The judge found for the defendant on the eighth count, and for the plaintiff for a part only of the amount claimed on the ninth count. The case is here on exceptions by both parties.

It is agreed that each of the paupers had his legal settlement and residence in Cambridge at the time of his commitment to the asylum at Bridgewater, that each was an insane pauper without kindred or other persons bound by law to support him and of sufficient ability to do so, and that the Commonwealth supported each in the asylum at Bridgewater during the periods alleged. It is also agreed, though this does not appear in the statement of facts, that no sufficient security was taken for their support to the satisfaction of the trustees, and that the only notices received by the defendant of the transfers to the asylum at Bridgewater were the bills that were rendered quarterly from the respective dates of transfer by the plaintiff to the defendant for their support.

We do not understand the defendant to question the regularity or validity of the transfers. In fact we understand it substantially to concede that they were valid. The principal question is whether the fact that the paupers were convicted criminals serving their sentences when they were adjudged insane and removed to the asylum at Bridgewater affects the liability of the defendant. That question would seem to have been settled so far as the State lunatic hospitals are concerned by *Smith* v. *Lee*, 12 Allen, 510, where it was held that the town in which he had his settlement was liable for the support of an insane pauper who, during his confinement under sentence in a house of correction, had been duly committed by a judge of probate to a lunatic hospital. The only difference between that case

and this would seem to be that here the commitments were made to the State Asylum for the Insane at Bridgewater. But that is an institution, it seems to us, where cities and towns are liable for the support of their settled insane paupers as they are at lunatic hospitals. The original design seems to have been to furnish accommodations for chronic insane men of the pauper and harmless classes in connection with the hospital and almshouse department of the State workhouse at Bridgewater, in other words to establish a sort of insane asylum; (St. 1886, c. 219) and the State board of health, lunacy and charity was given power to transfer inmates from the State almshouse and the several lunatic hospitals. Subsequently it was provided that " so much of the hospital and almshouse departments of the State farm at Bridgewater as was established for the care and maintenance of insane men " should be known and designated as the State Asylum for Insane Criminals (St. 1895, c. 390), and the board of lunacy and charity was authorized to make transfers to and from the State lunatic hospitals and the asylum thus established, and to transfer and commit to it any inmate of a lunatic hospital, or of the Worcester insane asylum, or of the State farm coming within the description of the persons named in St. 1894, c. 251. The same provision was also made for the discharge of persons committed to this asylum as for the discharge of persons committed to State lunatic hospitals. It is plain, therefore, we think, that the asylum at Bridgewater is to be regarded as a part of the system adopted by the Commonwealth for taking care of its insane rather than as a part of the system adopted by it for the purpose of taking care of its criminals. It is true that in certain cases the time of confinement in the asylum is to be computed as a part of the term of imprisonment, but that does not alter the fact that those committed to the asylum are there for treatment as insane persons and not for confinement as criminals; and it follows that the general provision in regard to the payment of the charges for the support of insane persons having known settlements in this Commonwealth applies to those supported in the asylum for insane criminals at Bridgewater. R. L. c. 87, § 79. See *Shrewsbury* v. *Worcester*, 180 Mass. 38. The case of *Gleason* v. *West Boylston*, 136 Mass. 489, relied on by the defendant, differs widely from the case at bar.

The defendant further contends that the provisions of R. L. c. 225, § 111, apply, and that it is not liable under the first count or under any of the other counts for any support since January 1, 1902, when the Revised Laws went into effect. It also contends in regard to some of the counts that it is not liable because no notice was given to it. Section 111 so far as applicable is as follows: "The expense of supporting a State prison convict who is committed to a State insane hospital shall be paid by the Commonwealth." So far as this is concerned, the conclusive answer is that no support is claimed for a State prison convict during the term of his sentence which is what the statute manifestly refers to. The first count is the only count referring to a State prison convict, and the period for which support is claimed in that did not begin until after his sentence had expired. The section then goes on: "The expense of supporting a prisoner who is removed from a jail or house of correction to the State farm shall be paid into the treasury of the Commonwealth by the county from which he is removed, and the amount thereof shall be determined by the State board of charity." It was upon this that the ruling of the judge in favor of the defendant in the eighth count and in part on the ninth count was evidently based. But we think that this has nothing to do with transfers to that department of the State farm known as the State Asylum for Insane Criminals. The statute from which the provision originally came referred only to the transfers of vagrants from houses of correction to the State workhouse (St. 1876, c. 96), and as found in the Revised Laws the provision manifestly refers to § 94 in the same chapter which also comes by successive re-enactments from St. 1876, c. 96. Moreover §§ 101 and 102 in regard to the removal of insane criminals plainly show that a distinction is made between a removal to the State farm and a removal to the State Asylum for Insane Criminals. We think therefore that the ruling in favor of the defendant under the eighth count and in part for the defendant under the ninth count so far as based on this ground was wrong, and that there should have been a finding for the plaintiff for the full amount claimed on each count.

The remaining objection relates to the matter of notice. If

the defendant was entitled to notice (as to which see *Adams* v. *Ipswich*, 116 Mass. 570), then the quarterly bills which showed that the Commonwealth was furnishing support under a claim for reimbursement, which were received by the defendant without objecting to such support, must be regarded as constituting a sufficient notice, and as having been so received by the defendant, or in other words as constituting a waiver by it of a more formal notice. *Smith* v. *Lee*, 12 Allen, 510. The only possible objection that is suggested to recovery under the second count is in regard to notice, and what has been said disposes of that.

It follows that the defendant's exceptions must be overruled and the plaintiff's exceptions sustained.

*So ordered.*

The case was submitted on briefs.

*G. A. A.·Pevey*, for the defendant.

*D. Malone*, Attorney General, & *J. F. Curtis*, Assistant Attorney General, for the plaintiff.