### COUNTY OF ESSEX,

#### AT THE

### AUGUST TERM, 1863.

---

PRESENT:

Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG,      } *Assistant Judges.*
Hon. ASAHEL PECK,

---

### The Town of Hardwick v. The Town of Pawlet.

*Removal of Paupers. Judgment. Emancipation. Settlement. Minors.*

An order of removal of a pauper will not be quashed on the ground that the justices found that the alleged pauper " is likely to become chargeable," while the complaint set forth that " she is chargeable."

Proof that the pauper was chargeable would include proof that she was likely to become chargeable, therefore the jury, in passing upon the complaint, would necessarily have to pass upon the finding of the justices.

A judgment by default in favor of a town against an alleged pauper and trustee for support, furnished by the town to the pauper, is not conclusive that the pauper had the means of support, it appearing or being conceded that the trustee was not indebted to the pauper.

Hardwick v. Pawlet.

Where a daughter, after arriving at full age, resides out of her father's family a greater portion of the time, free to go where she pleases, and controls her wages, she will be presumed to be emancipated though she continue to have a home at her father's in the ordinary way of unmarried daughters.

*Quere.* Whether under our statute children by continuing to reside with their parents after becoming of full age, can take by derivation an after acquired settlement of the parents.

THIS was an appeal from an order of removal on one Mary C. Jones. At the June Term, 1862, the defendant moved to quash said order. on the ground that the complaint to the justices alleged that said Mary C. Jones was chargeable to the said town of Hardwick, while the order of removal says she was likely to become chargeable. The court overruled the motion,—to which the defendant excepted.

At the December Term, 1862, the defendant pleaded that the said Mary was unduly removed because her legal settlement was not in the town of Pawlet, and because she was not chargeable or likely to become chargeable to the town of Hardwick when the order was made. Issue was joined on this plea, and the case was tried by jury, POLAND, CH. J. presiding. In relation to the settlement of said Mary it was conceded that she was born in Pawlet, November- 30, 1824, and was the daughter of Joel Jones, who then lived and had a settlement in Pawlet. Joel Jones continued to live in Paulet till March, 1836, when he removed to Fairfax, where he resided till May, 1843, when he removed to Wolcott, where he has ever since resided. Mary C. Jones became of age, November 30th, 1842, at which time the settlement of her father was in Pawlet, and it was conceded that she had never gained a settlement in her own right, but the defendant claimed that she remained a member of her father's family in Fairfax from her becoming of age in November, 1842, till the succeeding May, so that the settlement acquired by her father in Fairfax was communicated to her. The only evidence on this subject was the deposition of the said Mary, and the testimony of Joel Jones, the father. The substance of this testimony is given in the opinion, together with the charge of the court in respect to her settlement. The jury

returned a verdict that the pauper was duly removed. Exceptions by the defendant. The evidence on the part of the plaintiff tended to show that the said Mary had lived in the town of Hardwick, about a year and a-half, when said order was made, as a housekeeper for one Gould; that she became sick, and very destitute; that the overseer of that town aided her to the amount of about $28. or $30.

The defendant's evidence tended to show that the said Mary had money and debts due her, and did not need the assistance afforded. The defendant's counsel claimed that the plaintiff was bound to show that she was in fact chargeable, and that it was not enough to show that she was likely to become chargeable. It was conceded that the support was furnished, and the only question on this part of the case, was whether the said Mary was in need of the relief. Upon this subject no objection was made to the charge of the court, except as to a certain judgment rendered in favor of the town of Hardwick against the said Mary, and one Albee as trustee, for her support. The facts in reference to said judgment are given in the opinion of the court. It was conceeded that in fact Albee was not indebted to the said Mary; and the court ruled, and so charged the jury, that the judgment was not to be regarded as any available means she had to procure support for herself. To this the defendant excepted.

*Peck and Colby,* for the defendant.

(1) The pauper had no settlement with her father in Fairfax unless she had been emancipated. The fact of her becoming of age is not conclusive of emancipation. *Wells* v. *West Haven,* 5 Vt. 326. The charge was erroneous in holding a *contract* to stay at home necessary to render her a part of the family. *Continuance* as before was enough. *Burlington* v. *Essex,* 19 Vt. 91; *Glover* v. *Poultney,* 23 Vt. 328; *Bradford* v. *Lunenburgh,* 5 Vt. 481. Such was the common law, and our statutes have made no change in the common law. (2) The order was defective, and should have been quashed. It contained no adjudication upon the complaint of the overseer of Pawlet, but

did adjudge wholly upon a cause not in the complaint.   3 Burn's Justice, 536–7, 8, 9 ;  *Walpole* v. *West Cambridge*, 8 Mass. 276. (3)   The judgment *Hardwick* v. *Jones*, and *Albee* trustee, was clearly *evidence* of ability, and should have been so put to the jury.    It was not competent to attack it collaterally by proof that the trustee was not in fact trustee, and thus virtually set aside the judgment.

*B. N. Davis*, for the plaintiff.

PECK, J.   (1.) It is insisted on the part of the defendant, that the county court erred in overruling the motion to quash the order.   The ground of objection to the order is, that the justices find that the alleged pauper "is likely to become chargeable," while the complaint presented to them sets forth that she is chargeable.   It is claimed in argument that from this it appears that the justices did not adjudicate upon the cause set forth in the complaint, but upon a different cause.    It is not denied but that the justices find sufficient to warrant a removal under the statute, provided the allegation in the complaint had been that *she is likely to become chargeable.*   In order to warrant the justices in finding the pauper chargeable to the town it would not be sufficient merely to have proof that the town had rendered assistance to her by way of support, they must also have proof of such destitution and want on the part of the pauper as to render such assistance necessary.    The same destitution and want would be necessary to be shown, nearly if not quite to the same degree, to warrant them in finding her likely to become chargeable.   The justices therefore must have had the same proof and found the same facts as if they had found her actually chargeable, except the fact that the town had actually rendered the needful support.   The proof and facts found are therefore not different in the two cases, except that in the former case there is the additional fact that the town had rendered the assistance.   The finding of the justices therefore is substantially what is alleged in the complaint, only not to the same extent.   The greater includes the less.   The motion to quash was properly overruled.

(2.) It is next claimed that the finding of the justices, that

the pauper was likely to become chargeable, has not been adjudicated or passed upon by the jury. What has already been said is sufficient to answer this objection. It would have been sufficient on this point for the jury to have found either that the pauper had become, or that she was likely to become, chargeable. The plea was that she was not chargeable or likely to become chargeable when the order was made. It would have been sufficient for the jury to have found either. It is true the court told the jury that in order for the plaintiff to recover they must find that the pauper had become chargeable as alleged in the complaint, and the jury must have so found. But this charge being at the request of the defendant, the defendant cannot now object to it as error and claim that the jury have not passed upon the truth of the finding of the order. It appears that no question was made but that the plaintiff town had furnished the support to the amount of $28. or $30. The only question of fact in dispute under this issue was whether the alleged pauper was so far destitute of means as to warrant the town in aiding her. The only objection to the charge on this point is as to the effect of a certain judgment. It appears that after the support had been furnished, and after the order of removal was made, the town commenced a suit against the pauper and summoned one Albee as trustee, and procured a judgment against both by default. It appeared that in fact, Albee was not indebted to the pauper; that the debt intended to be attached was due to Gould, and had been transferred to one Lampson. The court told the jury that, as it appeared, or was conceded, that Albee was not indebted to the pauper, that judgment was not to be regarded as any available means she had to procure support for herself. It appears Albee refused to pay the judgment, and the town was advised by counsel that they could not legally collect it. What the irregularity in the judgment was did not appear. All the evidence in relation to the judgment was by parol. The ruling of the court was correct; *first*, for the reason that the judgment recovered after the support was rendered and the order of removal made, would not tend to prove that the pauper had means of her own to furnish support at the time the support was

rendered and the order of removal made, when it appeared that the trustee was not indebted to her ; ·secondly, the town was not bound to enforce an illegal or unjust judgment against the trustee founded on no debt or liability. The judgment was not con- clusive as between these parties,

(3.) The more important question arises upon the settlement of the pauper. The settlement in Pawlet derived from her father remained unless she took a derivative settlement in Fairfax by means of her father's settlement gained by him in that town after she became of full age. The statute provides that " legiti- mate children shall follow and have the settlement of their father, if he have any within the State, until they gain a settlement of their own," &c. This provision is not intended to apply literally without reference to age. It is obvious that the general purpose of this provision was to regulate the settlement of minor children. Wives and minor children have a derivative settlement from the husband or parent because it is not proper that they should be separated while the husband or parent has the legal control, care and custody of them, and the right to their services. If this provision is construed to give the children generally by derivation the settlement the parent may require after such children arrive at full age, until they gain a settlement of their own, it would seem to be in conflict with other provisions of the statute. For instance, that provision which gives a settlement to " *every person of full age* " residing in a town and having a grand list of a certain amount for five years in succession ; and that giving a settlement to " *any person* " having a settlement in the State, " *and of full age,*" by a residence of seven years with- out becoming chargeable to any town. But it is claimed that the first provision above alluded to extends to children of full age, unless they have become emancipated, and if not emancipated on coming of age, they take by derivation an after acquired settlement of the parent. This is undoubtedly the rule under the English pauper laws, and the judge seems to have tried the cause upon the theory that a similar principle is applicable under our statute. If this is the true principle which should govern the case, the question is whether the direction to the jury as to

what would amount to an emancipation, as applied to the evi-
dence, was correct.  The only evidence on this point was that of
the father, which is set out in the exceptions, and the deposition
of the pauper referred to.  The pauper arrived at full age in
November, 1842, and her father completed his seven years resi-
dence in Fairfax by which he gained a settlement there in March,
1843.  In the meantime, after she had become of age, in the fall
and some part, and as the evidence tends to show, the greater part
of the winter, the pauper lived away some miles from her father's,
and the residue of the time at her father's, making her home at
her father's, he furnishing her with some clothes.  Whether her
father had her wages during this time the evidence was con-
flicting.  Some of the evidence tends to show that the same
relation existed between them after she became of full age as
before, and some of it tends to show the contrary.  This state
of things continued till her father removed from Fairfax to
Wolcott in May 1843, when they became separated, she, after
that, working out at different places on her own account.  The
court told the jury that the pauper, by becoming of full age, was
*prima facia* emancipated, and that in order to prevent it, it was
incumbent on defendant to prove that in fact the same relation
continued to exist between her and her father as before.  This
general proposition is too well settled to require a reference to
authorities  She then became *sai juris.*  Their legal relations,
*prima facia* at least, were changed.  Her legal duty of service
and obedience, and his legal obligation of protection and support,
which formerly existed, terminated.  It is true, emancipation,
as applicable to a minor, may be defined to be the contracting of
a new relation inconsistent with parental authority and control,
or being under a different control, incompatible with that of the
parent, till after the age of twenty-one.  The emancipation of a
minor is not to be presumed, it must be proved.  If a minor,
being put under a control incompatible with that of the parent,
which, if continued till he arrives at full age, would constitute
emancipation, yet if such new relative terminates during his
minority (the minor having gained no settlement of his own) he
again becomes incorporated into the family of the parent, is remit-

ted to his former relation, and his settlement changes during his minority with that of the parent. In case of one arrived at the age of majority these principles and presumptions are reversed. The law so changes the status at the age of majority, that emancipation is presumed till the contrary is shown; and if an adult once become emancipated, he cannot be again so incorporated into his father's family as to restore the former relation for the purposes of a derivative settlement. *The King* v. *The In. of Roach*, 6 T. R. 247; *The King* v. *The In. of Hardwick*, 11 East, 578. There are many other cases that recognize these principles. But still the question remains, what proof is necessary to show that the same relation continues *after*, that existed *before*, arriving at the age of majority? There are some English cases which seem to hold that proof that the child, on coming of full age, still continues to reside uninterruptedly with the parent as part of the family, rendering service without wages, and receiving support without compensation, in the same manner as before, rebuts the presumption of emancipation. In *King* v. *Roach* above cited, L. KENYON says: "if the son with unbroken continuance remain with, and a member of, the father's family, he is not emancipated." If proof of such continuance in the family is matter of evidence from which a jury may or may not infer that the same relation existed, it was not error to leave it to the jury to find whether by some understanding "her father was to have her earnings and furnish her support;" and if it is matter of law, then the facts in this case do not bring the case within the principle. The pauper did not live constantly in the family, but a great portion of the time in question she lived away at work for wages. This was *prima facie* an emancipation, capable perhaps of being obviated by proof of, an understanding that as between her and her father she was under his control in his service without wages, and to receive support from him, the same as while a minor; or in the language of the charge, that her father was to have her earnings and furnish her support. This was a question of fact for the jury, and to the charge thus far the defendant has no reason to complain. The instruction "that if when she became of age she became and continued

entirely free to go where she pleased and control her earnings, she was emancipated," "though she continued to have her home at her father's in the ordinary way of unmarried daughters," must be construed in reference to the facts in the case, and in this view the proposition of fact involved in this portion of the charge is inconsistent with a continuance of the former relation. Continuing to have her home at her father's in the ordinary way of unmarried daughters, while out at service the greater portion of the time for wages, or without wages, would not prevent emancipation, she being free to go where she pleased and control her wages. The facts do not present the question whether remaining continuously *with*, and a member *of*, her father's family, would be sufficient to rebut the presumption of emancipation. As she resided out of her father's family the greater portion of the time after she became of full age, it was incumbent on the defendant to show at least an understanding that she was still in the service of her father as before, that the same relation continued as before. In *The King* v. *Roach* the daughter had always resided with her father till 22 or 23 years of age, when she went and lived in another family in the same parish for a temporary purpose eight weeks, for which she received eight shillings, and then returned to her father's and continued to reside with him as before as a member of his family. It was held she was emancipated. In *Springfield* v. *Wilbraham*, 4 Mass. 493, the facts were very similar, and the court upon the principles of the English cases came to the same result.

But there is still a question whether under our statute, which was enacted in 1817, children by continuing to reside with their parents after becoming of full age, can take by derivation an after acquired settlement of the parent—whether the English decisions are applicable. The provision in our statute relative to the settlement of legitimate children is a copy of the Massachusetts statute of 1793. Under that statute it is there held that such children can take no such settlement. The same is held in N. Hampshire under a like statute, *Springfield* v. *Wilbraham*, 4 Mass. R. 493 ; *Upton* v. *Northbridge*, 15 Mass. 237 ; *Orford* v. *Rumney*, 3 N. H. 331 ; *Andover* v. *Merrimack County*,

Lyndon *v.* Miller et al.

37 N. H. 438; *Fitzwilliam* v. *Troy*, 6 N. H. 166. The only exception is of children who are *non compos*, or who, from mental or physical disability, are compelled to remain with their parents, rendering it fit that they should remain with and under the control, care and protection of their parents. This exception is put upon the ground of humanity. If we put the same construction upon our statute, the charge is clearly not obnoxious to any of the objections urged against it. We do not consider it necessary to decide this point, as we think upon the other ground the charge can be sustained.

Judgment affirmed.