## TOWN OF WESTMORE *v.* TOWN OF SHEFFIELD.

*Transient Pauper. Mental Capacity sufficient to gain Settlement. Evidence. Identification of Paper. Requests to Charge. New Trial.*

The contention was which of two towns should support a certain pauper, and this turning on the question whether the pauper had sufficient mental capacity or power to form an intention as to his abode so as to gain a settlement, the court charged: "And if you are satisfied by the proof that Daniel had a mental infirmity; not that he was an idiot, but that from mental infirmity his mind was so far weakened that he was in a

Westmore *v.* Sheffield.

state of helplessness and dependence upon the care of his parents, that it was rendered proper and necessary that he should live with his parents and have their supervision, direction and care, upon humane principles then he was not emancipated." The court then correctly explained to the jury that if the pauper was so lacking in mental capacity as to prevent emancipation on his attaining majority, the same defect would prevent his acquiring a settlement in the plaintiff town. *Held*,

1. Error; that the question should have been submitted, whether the pauper had *sufficient mental capacity to form and have an intention and choice as to his abode when he went to and lived* in the plaintiff town, and whether he went and remained there pursuant to such intention.

2. DATE. IDENTIFICATION OF WRITING. The time of removal of the pauper's father to the defendant town was material. A witness testified that his own father purchased of one W. a farm, about the same time; and that three years before the trial he had found a deed from W. among his deceased father's papers, describing the farm. *Held*, (*a*) that the deed was admissible to show the date of purchase; and (*b*) that it was the province of the trial court to determine when the paper had been sufficiently identified.

3. MENTAL CAPACITY—OPINION. A witness, on cross-examination, was properly inquired of, if he *considered* the pauper what was called a *non compos* person.

4. REQUESTS TO CHARGE. Requests should be brief, plain, and concise; and if they are not, it is the duty of the judge to return them for amendment; and, until again presented in proper shape, the requests should not be considered before the court, and no exception based on them allowed. The court is bound to charge upon every point material to the decision of the case, whether requested or not.

5. NEW TRIAL. The newly discovered evidence must be such as, in all probability, would lead to a different verdict and judgment; and the petition is dismissed, because the court cannot say that the evidence would lead to a different result. But when a case has been tried twice, and a leading issue in both trials was as to a date; namely, the *very* day the pauper's father moved into the petitioning town, the rules as to granting new trials should be adhered to with strictness.

6. PRESUMPTION—BURDEN OF PROOF. It is presumed that the pauper was emancipated on attaining majority; and the burden is on the plaintiff to prove that he was not.

ASSUMPSIT to recover the cost of relieving one Daniel Leland, an alleged pauper. Trial by jury, September Term, 1882, Orleans County, POWERS, J., presiding. Verdict for the plaintiff:

The court charged, in part:

"In order for the plaintiff to recover for these expenditures it must show to you by a fair preponderance of the evidence that this Daniel Leland was a poor person, fallen in need of help; that he had a legal settlement in the town of Sheffield, and that

Westmore *v.* Sheffield.

these expenditures were incurred in good faith in his proper support. The first question which will naturally present itself to you for consideration is, had Daniel Leland a legal settlement in the town of Sheffield?        *        *        *

In order for a person to gain a settlement by a residence of seven years under our statute it is necessary that that person come to reside in the town to be charged with the intention of residing there—making it his home and residence; that he remain there with such intent for the period of seven years, and that in addition to that, he shall have come from some other town in the State in which he had a legal settlement. To illustrate what is meant by this rule: A person coming into Vermont from another State and residing for the period of seven years in any town does not gain a legal settlement in that town, because, as it is said in some of the cases, there is no starting point. He must come from another town in the State in which he had a settlement, and reside in the new town of his residence for seven years in order to acquire a residence by a continuous residence of seven years; that is the present rule, and was the law at the time this residence in Sheffield was claimed."

The other facts are sufficiently stated in the opinion of the court.

*Bates & May* and *L. II. Thompson*, for the defendant.

There was error in the charge; because, according to it, the plaintiff's right of recovery is made to depend solely upon whether or not "Daniel was a poor person, fallen in need of help." The ruling is in direct contradiction to repeated decisions. *Berlin* v. *Worcester*, 50 Vt. 23; *Danville* v. *Sheffield*, 50 Vt. 243; *Stamford* v. *Readsboro*, 46 Vt. 611; *Pittsford* v. *Chittenden*, 44 Vt. 382; R. L. s. 2818. There was error in the charge as to what was necessary to gain a settlement by residence. R. L. s. 2811, subdiv. 8; *Ludlow* v. *Landgrove*, 42 Vt. 137; *Randolph* v. *Braintree*, 10 Vt. 444; *Anderson* v. *Anderson*, 42 Vt. 350; *Johnson* v. *Huntington*, 1 Day 212; *Gardner* v. *Farmingdale*, 45 Me. 541; *Warren* v. *Thomaston*, 43 Me. 406; *Corinth* v. *Bradley*, 51 Me. 540; *Holyoke* v. *Haskins*, 5. Pick. 20.

A person having a settlement in any town in this State, and of

full age, who resides in any other town in this State, for the term of seven years, and during said term maintains himself and family, and does not become chargeable to either of said towns, thereby gains a settlement in the town in which he so resides. The intention with which such residence was commenced has never been held to be material, except in proceedings to remove said person, to the town of his legal settlement before the new settlement had been acquired by residence of seven years. *See* above authorities.

There was error in the charge as to the pauper's mental capacity, emancipation, etc. Under the charge, if the jury found that Daniel was physically weak to such an extent that it was fit that he should remain with his parents after he was twenty-one, they must find that he could not gain a settlement in Westmore by residence there, regardless of any measure of intelligence possessed by him. *Hazen* v. *Smith*, 21 Vt. 123; *Park* v. *Tabor*, 22 Vt. 222; *Dodge* v. *Stacy*, 39 Vt. 565. There was error in admitting the deed produced by Lilley. 1 Green. Ev. (12 ed.) ss. 21, 144, 570, 573. The question asked as to whether the witness *considered* the pauper a *non compos* person, was improper. The witness—not an expert—was allowed to state his opinion, instead of facts, upon a vital question.

*Edwards, Dickerman* and *Young*, for the plaintiff.

There was no error in the charge as to the emancipation of the pauper, or as to the pauper's gaining a settlement in Westmore. The general rule is that children become emancipated when they arrive at the age of twenty-one years. But children, who, from want of understanding, are incapable of taking care of themselves, do not become emancipated at the age of twenty-one, if they continue under the control of their father. RICHARDSON, CH. J., in *Orford* v. *Rumney*, 3 N. H. 331. Emancipation, under the pauper law, exists when the minor contracts a new relation inconsistent with being a part of the family. ALDICE, J., in *Sherburne* v. *Hartland*, 37 Vt. 528. *See Hardwick* v. *Pawlet*, 36 Vt. 320; *Morristown* v. *Fairfield*, 46 Vt. 33;

*Upton* v. *Northbridge*, 15 Mass. 237; *Taunton* v. *Middleboro*, 12 Met. 35; *Poultney* v. *Glover*, 23 Vt. 328; 4 Conn. 373; 16 N. J. L. 119; 3 Pick. 173; *Croydon* v. *Sullivan*, 47 N. H. 184; *Gilmanton* v. *Sanbornton*, 56 N. H. 336. By the charge of the court the jury were, to say the least, required to find as low a grade of mental capacity in the pauper as was shown in the case when it was before the court on a petition for a new trial. And we claim from that decision, the pauper was never emancipated, and that he was incapable of gaining a settlement in Westmore, by reason of mental imbecility, the facts in relation to his stay in Westmore being undisputed, and appearing the same on both trials. *Brownington* v. *Charleston*, 32 Vt. 411; 22 E. C. L. 326; 1 Root, 196. The case is exactly parallel with *Brownington* v. *Charleston, supra. See Danville* v. *Putney*, 6 Vt. 512; *Sutton* v. *Cabot*, 19 Vt. 522. Again the pauper could not have gained a settlement in Westmore, because he did not *maintain* himself. R. L. s. 2811, subdiv. 8. All the cases agree that the residence must be *sui juris.* Royce, Ch., J., in *Woodstock* v. *Hartland*, 21 Vt. 56; Redfield, J., in *Brookfield* v. *Hartland*, 10 Vt. 424. There was no error in the action of the court as to the defendant's requests. *Drake* v. *Curtis*, 1 Cush. 395; *Peterson* v. *Farnum*, 121 Mass. 476.

The opinion of the court was delivered by

Veazey, J. I. The action is assumpsit brought by the town of Westmore against the town of Sheffield to recover for certain expenditures made by the plaintiff in the needful support of Daniel Leland, an alleged *transient* poor person in the plaintiff town. Daniel had lived with his father until the decease of the latter in 1867, and was then over twenty-one years old. Early in 1868, pursuant to an arrangement between Daniel's mother and brother Joseph, the latter took Daniel from Sheffield, where he had lived with his parents, to Joseph's home in Westmore, and Daniel from that time lived in Westmore, first with his brother Joseph and afterwards with his sister, Mrs. Robinson,

until her decease, and until March, 1878, when his sister's husband called upon Westmore to support Daniel, which it did, and thereupon the overseer called upon Sheffield to assume his support, which it neglected to do; and it was for this support furnished by Westmore that this suit was brought. The plaintiff's evidence tended to show that Joseph received consideration for thus undertaking Daniel's support, and transferred the same to the Robinsons when they took Daniel. The latter having lived in Westmore long enough to gain a settlement in his own right, more than seven years, one of the material questions on the trial was whether he had sufficient mental capacity to gain a legal settlement. The evidence was conflicting on this point.

The County Court correctly instructed the jury in substance that emancipation of a *minor* is not to be presumed but must be proved; but upon attaining majority the presumption is reversed. *Hardwick* v. *Pawlet*, 36 Vt. 320. Applying this rule the court properly told the jury that Daniel is presumed to have been emancipated when he reached the age of twenty-one, and that the burden was on the plaintiff to overcome this presumption by proof. The court then said: "And if you are satisfied by the proof that Daniel had a mental infirmity, not that he was an idiot, but that from mental infirmity his mind was so far weakened that he was in a state of helplessness and dependence upon the care of his parents, that it was rendered proper and necessary that he should live with his parents and have their supervision, oversight, direction and care, upon humane principles then he was not emancipated." This proposition was elaborated and illustrated. The court then correctly explained to the jury that if the proof showed such a lack of mental capacity as to prevent emancipation on attaining majority, the same defect would prevent Daniel's acquiring a legal settlement in Westmore, unless he made a gain in capacity while living there. As the case stood upon the evidence, was the above proposition the true and correct test or rule to guide the jury in deciding whether Daniel acquired a settlement in Westmore? If Daniel was an idiot he could acquire no settlement by residence, because he was inca-

pable of forming an intent to live anywhere. But the defendant's evidence tended to show he was above an idiot, and had sufficient mental capacity or power to form an intention and to have a choice and desire as to his place of abode. We think if he had that degree of mind and went to Westmore to live voluntarily, as a matter of choice, and without compulsion, and so resided there for the required period without assistance from any town, he thereby acquired a settlement in Westmore. If he fell short of this degree of mental capacity, his residence there availed nothing towards a settlement. Being a person of weak intellect he would naturally rely upon and be influenced and controlled in making a choice of residence by his friends, but this fact, as stated by PIERPOINT, Ch. J., in *Ludlow* v. *Landgrove*, 42 Vt. 137, would constitute, of itself, no sufficient reason why his residence for the required time should not give him a legal settlement. If he was there under compulsion or restraint and against his wishes, then the essential quality of intent to live there was wanting. He was not there *animo manendi*. His being there was only the stay of a transient person analogous to an imprisonment without choice or purpose, as in the case of *Browningington* v. *Charleston*, 32 Vt. 411. The plaintiff's evidence tends to show that Daniel was taken by his brother to the latter's home in Westmore, and there supported until his sister and her husband took and supported him in the same way; but this does not necessarily impart the idea of compulsion or exclude the idea of choice on Daniel's part. The case as presented does not show conclusively that while he resided in Westmore he did not do so freely, and of his own choice. This was an open question. As the case stood upon the defendant's evidence, we think the charge did not give the defendant the full benefit of the rule as above indicated, which was made prominent in *Ludlow* v. *Landgrove, supra.*

The learned judge, in charging the jury, put this branch of the case upon the ground of helplessness and dependence, mental and physical, such as would render it one of the demands of humanity that the child should remain with his parents after

majority just the same as before, and omitted to submit the question whether Daniel had sufficient mental capacity to form and have an intention and choice as to his place of abode when he went to Westmore and while he lived there, and whether he went and remained there pursuant to such intention and choice. In this we think there was substantial error. The proposition of the County Court seems to have been derived from cases where the pauper was infirm in body and mind, and had continued to live at home after becoming of age; and not where the father had died, and the home was broken up and the pauper had lived elsewhere the required period to gain a settlement in his own right. Illustrative cases of the first class are *Hardwick* v. *Pawlet, supra; Orford* v. *Rumney,* 3 N. H. 331 ; *Croyden* v. *Sullivan,* 47 N. H. 284 ; *Upton* v. *Northbridge,* 15 Mass. 237.

The case at bar is like *Ludlow* v. *Landgrove, supra,* which is one of the latest decisions of this court on this question, and outlines, as we think, a simple and sound rule, by which to determine the question of settlement in this and like cases.

II. A material issue on the trial was the time of the removal of Jesse Leland, the father of Daniel, from Boston to Sheffield. Bearing directly upon this issue was the question as to the date of the purchase of a farm in Calais by William O. Lilley, of one Willard. William O. afterwards deeded this farm to his son Harvey, who was a witness for the plaintiff, and had testified to the purchase of said farm by his father, since deceased, and his removal on to it in November, 1860, soon after the purchase, and that the witness had found among his father's papers after his death, and three years before this trial, a deed from said Willard to his father which described the same farm, which deed the witness produced and testified that it was the deed of this Calais farm. Whereupon the plaintiff offered said deed to show the date of said purchase, to the admission of which the defendant objected and excepted, for the reason that the deed was not sufficiently identified.

We think the deed was properly admitted for the purpose offered. The instrument was not directly in issue. There was

no question but that just such a paper was executed. It was admissible not on the ground of being an ancient deed, but because it was identified as being what it purported to be. On the collateral issue it was the province of the court to determine when the deed was sufficiently identified.

III. The question, asked George M. Robinson whether he considered Daniel what they called a *non compos* person, was proper. It was asked on cross examination by the plaintiff, after the witness had been examined by the defendant as to Daniel's mental capacity, Daniel having long lived in the witness' family.

IV. The only remaining points of exception important either in their general aspect or in reference to another trial, are those in reference to the requests to charge submitted by the defendant.

The controverted question was whether Daniel Leland had a legal settlement in the town of Sheffield. Bearing upon this were some collateral issues of ordinary character.

After the evidence was closed and before the arguments, the defendant's counsel presented to the court nineteen written requests for instructions to the jury, many of them very long and very much involved in statement of law and fact. The court remarked to the counsel that the requests were unnecessarily voluminous; some of them inapplicable to any claims made during the trial; some were hypothetical, and the whole might profitably be condensed; and returned the requests to the counsel, requesting them to condense them as far as practicable, saying the court would charge upon them when so simplified. The court saw no more of them until the bill of exceptions was presented after the trial. At the close of the charge the defendant excepted to the failure to charge as requested and to the charge upon the subject matter of the requests. These exceptions were allowed conditionally upon the determination by the Supreme Court of the right of the defendant to have them certified.

We are agreed, that the court treated the requests properly

when presented, and according to its right and duty ; and that defendant is entitled to have no exception considered which depends on the requests. · The questions of fact were simple, and the propositions of law, applicable to the case, were capable of presentation, briefly and plainly. No requests are needed in any case for the purpose of protecting any rights. In this State the court is bound to charge upon every point material to the decision of the case, upon which there is evidence, and to charge correctly and fully, whether requested or not. *Vaughn* v. *Potter*, 16 Vt. 266.

But requests serve a very helpful purpose when they contain brief and plain statements of the law which·apply to the case in the honest belief of counsel. They then present to the court the respective theories of the law on which the parties rely. In view of the short time that the presiding judge usually has to prepare a charge, the requests will be but a hindrance rather than a help, if they are not concisely and comprehensively presented. If counsel do not perform their duty in this respect in the first instance it would be the right and duty of the judge to return the requests for amendment. Until again presented in proper shape, they cannot be considered as before the court for consideration. We think these requests fall far short of being brief, plain, concise or helpful to the court. As a chart and guide for the charge, if it had been possible to go through with them in all their aspects, we think they must have led to such confusion that the main issues would have been lost sight of. *Judgment reversed and cause remanded.*

V. The defendant filed a petition for a new trial on two grounds : first, that the verdict was contrary to the weight of the evidence; and second, newly discovered evidence. The petition and exceptions were heard together. We think the verdict is not so clearly and plainly against the weight of evidence as to warrant a new trial on that ground. *Hill* v. *New Haven*, 37 Vt. 512. As to the second ground, which is mainly relied on, we have given all the evidence, both old and new, such careful study and analysis as its great volume

and the peculiar attitude of the case necessitated. The case had been tried twice before, once by jury and once on a former petition for a new trial. One of the principal, if not the leading issue, at the first trial was the same as at the last trial, viz.: whether the father of the pauper had lived in Sheffield seven years before his decease, which occurred December 4th, 1867. It was conceded that he moved to that town about the 4th of December, 1860 ; the plaintiff claiming it a few days before, and the defendant a few days after. Therefore both parties understood the issue clearly. Bearing on it was the question when William Lilley moved to Calais from the farm in Sheffield which he had sold to Robinson, and upon which Jesse Leland, the father, moved when he went to Sheffield. This took place twenty years before this controversy arose. The date of these removals presented an issue about which evidence would naturally continue to develope. After each trial new witnesses would be likely to appear who would at least think they remembered some circumstance bearing on the controverted date. Counsel and town agents could always truthfully say they did not know of the evidence at the trial and had no reason to know of it. It is a case where the rules as to laches in discovering the evidence, and as to the admission of cumulative evidence, should be adhered to with strictness. We should hesitate to hold that those rules do not ordinarily apply as against this petitioner. But perhaps a more satisfactory ground for denial of the petition, is, that we are not satisfied with that degree of certainty which the law requires, that the new evidence would change the verdict. Certain events were established by the new witnesses quite satisfactorily ; but whether Mr. Lilley moved from Sheffield to Calais before or after those events depended upon memory. Some witnesses were positive and supported their testimony by circumstances ; but against this there were other witnesses and other circumstances. In the evidence of some of the new witnesses there was more or less of inconsistency and uncertainty.

The exact date, and indeed the matter of the removal, was of

no such consequence to any of the witnesses as to be fixed in their memory with certainty. They only undertake to say, as a matter of memory, after the long lapse of time intervening, that the removal was before or after certain other events not related to the removal. Such evidence necessarily leaves the question in doubt, where the fact was of itself, as to exactness of time, so unimportant.

In view of those obvious considerations which would not fail to be urged in derogation of its credit and value, we cannot properly say that the evidence newly discovered would, in all probability, lead to a verdict and judgment the other way, which is the requirement in granting a new trial on the ground urged. *Middletown* v. *Adams*, 13 Vt. 285 ; *Beckwith* v. *Middlesex*, 20 Vt. 593.

Petition dismissed with costs.