# TOWN OF TOPSHAM *v.* TOWN OF CHELSEA.

## *Insane Pauper.*

1. When a child's intellect has been so impaired by insanity that she is incapable of exercising any choice or intention in regard to her residence, she would not be emancipated on attaining her majority if she continued to reside in her father's family, and would take by derivation a settlement acquired subsequently by him.

2. Until the contrary is conclusively shown, it is presumed that a pauper has sufficient intellect and intelligence to exercise a choice and intention in regard to her residence.

3. Where an insane child, after she has attained her majority, continues to reside in her father's family, and he subsequently acquires a settlement in another town, it is unnecessary to decide whether she was emancipated; for if she did not take the settlement of her father, she took one in her own right by a residence of more than seven years.

ORDER of removal of a pauper. Heard on an agreed statement of facts, June Term, Orange County Court, 1886, ROWELL, J., presiding. Judgment that the pauper was duly removed from the town of Topsham to the town of Chelsea.

Agreed statement :

"It is admitted by the parties in this cause that the facts are sufficient on which to base a judgment for the plaintiff, in the usual form, unless the contrary hereinafter appears.

" The pauper became eighteen years of age at a time when her father lived and had his legal settlement in the town of Corinth, Vt. About that time her father and family moved to Chelsea, the defendant town, and he there acquired a legal settlement and has ever since held the same.

" This settlement was acquired by seven years' residence, commencing in March, 1867. The pauper always resided with her father and in his family until a short time before the order

in this case was made, and has never gained a settlement anywhere for herself unless she has in said Chelsea. She resided and had her home in said Chelsea for more than seven years after she became of age, and has never resided in any other town for the space of seven years, and had her settlement in said Chelsea at the time said order was made, providing she was mentally and physically capable of gaining a settlement by residence, or if she took and had her father's settlement which he had at said time in said Chelsea.

" The pauper has always been mentally and physically infirm, and not capable of taking care of herself, and required and has had the care of her father in his family the same since she became eighteen years of age as she had before.

" The pauper at the time she became of age, and for a long time before, had been insane at irregular intervals, frequently recurring, and had so been insane to such an extent that she was incapable of taking care of herself, from the fact that it could not be anticipated from day to day what her condition would be. And her mind was so affected by her often recurring fits of insanity that she was rendered incapable of caring for herself even in her sane intervals. And this condition of mind has continued ever since."

*S. B. Hebard*, for the defendant.

At the time the pauper became of age her father, from whom she derived her settlement, had his settlement in Corinth, and therefore her settlement is in Corinth.

When she arrived at majority she was emancipated, and did not in her own right acquire a settlement elsewhere, and could not, because of her mental condition.

She could not " come to reside " in any other town, by reason of her infirmity of mind.

She could not have the necessary intent. To have acquired a settlement in Chelsea, she must have intended to reside there and this from her condition she did not and could not legally have done.

If her father had not resided in Chelsea the requisite seven years, so that he did not gain a settlement, but the pauper did reside there seven years, could she have acquired a settlement

in her own right? Certainly she could not, as the necessary element of the coming to reside is lacking, namely, the intent.

But if the court shall hold that the pauper was never emancipated, then we say that she was not subject to an order of removal. To be subject to an order she must have " come to reside " in Topsham, in the legal sense. And legally she could not have so " come to reside," being *non compos mentis.*

R. M. *Harvey,* for the plaintiff.

The pauper's mental condition was not such as to render her incapable of gaining a settlement. It does not appear, except perhaps inferentially, but that her residence in Chelsea was of her own choice, that she was not capable of choosing, and was acting under restraint. This case comes under the rule laid down in *Ludlow* v. *Landgrove,* 42 Vt. 137. It is not inconsistent with *Brownington* v. *Charleston,* 32 Vt. 411. It is not very material whether the pauper was emancipated or not; for if not, then she takes the settlement of her father, which was in Chelsea. *Hardwick* v. *Pawlet,* 36 Vt. 320 ; *Upton* v. *Northbridge,* 15 Mass. 237 ; *Charleston* v. *Boston,* 13 Mass. 469 ; *Orford* v. *Rumney,* 3 N. H. 331 ; *Salisbury* v. *Orange,* 5 N. H. 348 ; *Alexandria* v. *Bethlehem,* 16 N. J. L. 1 Harr. 116 ; *Bradford* v. *Lunenburg,* 5 Vt. 481.

The law presumes that the pauper was emancipated on becoming eighteen years of age. *Hardwick* v. *Pawlet,* 36 Vt. 320 ; *Poultney* v. *Grover,* 28 Vt. 327.

The opinion of the court was delivered by

Ross, J. The contention is in regard to the last legal settlement of the pauper, Mary Folsom. When the pauper became of age her father's legal settlement was in the town of Corinth. Soon after that date, the father moved with his family, including the pauper, into the defendant town and there acquired a legal settlement. If the pauper took this last settlement of her father, or if she acquired a legal settlement in Chelsea in her own right by more than seven years' residence therein, unaided

by the town, she was properly removed to the defendant town. The agreed facts do not very conclusively show whether the pauper possessed sufficient intellect and intelligence to exercise an intention and choice in regard to her place of residence. If she did, there being nothing in the agreed case to show that her residence in Chelsea was constrained, it is presumed to have been from choice and because she preferred to live there with her father, and she gained a legal settlement in Chelsea in her own right. But if the frequent fits of insanity, which began to occur before the pauper attained majority, had so impaired her intellect and intelligence, as it would seem quite probable it may have done, that she was incapable of exercising any choice or intention in regard to the place of her residence, then she was suffering from such mental and physical disability and infirmity as rendered it fit that she should remain with, and under the control, care and protection of her father ; and she would not be emancipated on attaining majority, and would take the after-acquired settlement of her father in Chelsea. *Hardwick* v. *Pawlet*, 36 Vt. 320. Such a mental and physical condition would rebut the presumption of emancipation which arose from the attainment of majority. Whether emancipated or not, she resided continuously in the family of her father in Chelsea. Hence she either acquired a legal settlement there in her own right, or took the legal settlement acquired by her father. It is not material to determine which ; for it is agreed in the agreed statement of facts that the facts are sufficient to uphold a judgment for the plaintiff in the usual form, unless the contrary appears. The defendant contends, that if the pauper's intellectual and physical condition was such that she could exercise no choice, or intention in regard to the place in which she would reside, she was a transient pauper in the plaintiff town, and not amenable to an order of removal, because she did not, in the language of the statute, '' come to reside '' in the plaintiff town ; that is, reside there from choice and intention. To be amenable to an order of removal, the pauper's residence in the removing town must

be from choice and intention. But, by the agreed case, the parties have supplied this fact, if necessary to support the order of removal. It is evident from the statement of the doctrine in *Hardwick* v. *Pawlet, supra,* that a child may be in such a condition as to render it fit, on the ground of humanity, that it should remain under the care, control and protection of the parent, after attaining majority just as it did before that time, and yet have the power of choosing in regard to a place of residence. If therefore the decision should be placed upon the basis that the pauper took her father's settlement in Chelsea, acquired after she attained majority, because unemancipated, the parties, in the agreed case, have supplied the other fact, the ability to chose and intend, necessary to uphold the order of removal. It is, therefore, not necessary to determine whether the pauper was to be regarded emancipated or unemancipated, during her residence in her father's family in Chelsea. In whichever condition, on the agreed facts, the plaintiff is entitled to hold the judgment of the County Court in its favor.

That judgment is affirmed.