## TOWN OF CRAFTSBURY

v.

## TOWN OF GREENSBORO.

MAY TERM, 1894.

*Pauper. When he supports himself and family within No. 55, Acts of 1892. Abandonment. Vested right.*

1. A person of weak mind, who has continued to live in his father's family after becoming of age as before, is emancipated by his marriage.

2. Upon the question whether a pauper is chargeable to a town under No. 55, Acts 1892, for the reason that he has resided in such town for three full years, " supporting himself and family," the source of that support is immaterial, provided no aid has been furnished by any town.

3. So where the wife of the pauper took one of their three children, went into an adjoining town, and there maintained herself for several months, without any reference to her husband, who with the other children and their household effects remained in the defendant town, this would not interrupt the running of the three years.

4. The fact that the husband had abandoned his wife and a portion of his children previous to their application to the plaintiff town for assistance is immaterial, for the statute expressly declares that assistance shall be afforded to the pauper or his family, and that the town so affording it may recover of the town where *the pauper* last resided for three years supporting himself and family.

5. There is no vested right that a pauper shall be supported in a particular town, either upon the part of the pauper himself or upon the part of another town.

Assumpsit for the expense of maintaining certain paupers alleged to be chargeable to the defendant town. Plea, the general issue. Trial by jury at the February term, 1894,

Orleans county, ROWELL, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The plaintiff sought to recover the expense of supporting the wife and children of O. A. Silver, the family of one William Graham, and one Elizabeth Graham, upon the ground that the said Silver, the said William Graham, and the said Elizabeth Graham, were paupers who had resided for more than three years in the town of Greensboro, maintaining themselves and families. The defendant conceded that the plaintiff had expended the sums sued for in the support of these paupers, but denied that it was liable in respect thereto, except in the case of the family of William Graham, for the reason that the paupers had no residence in the town of Greensboro within the meaning of No. 55, Acts of 1892, and for a further reason that that act was unconstitutional in respect to the family of O. A. Silver.

O. A. Silver was born in 1847 in the town of Greensboro and continued to reside there as a member of his father's family continuously from his birth until 1882. It was not claimed that during all that time any assistance had ever been furnished by the town of Greensboro or by any other town either to the pauper himself or to his father while the pauper was a member of his family but the defendant claimed that the pauper was a person of weak intellect, incapable of caring for himself, needing the care and assistance of a parent; that he had continued to reside in his father's family as a member of that family in the same manner after attaining his majority as before, and for that reason had never been emancipated previous to the date of his marriage. The court ruled that the evidence of the defendant did not tend to show that the pauper did not become emancipated upon reaching his majority, and that he had so become emancipated, and had, therefore, acquired a residence in the defendant town previous to his marriage in 1882, to which the defendant excepted.

Subsequent to his marriage in 1882, the pauper continued to reside at various places in the town of Greensboro and in adjoining towns. He purchased a small quantity of furniture, kept house with his wife at several different places for a short time, but was, during a considerable portion of the time, a member of his father's family and supported with his wife and children by him. It was not claimed that he had acquired a residence in that town after his marriage unless it was by virtue of his having lived there from the spring of 1883 to the fall or winter of 1886. It was conceded that the pauper and his wife had moved into the town of Greensboro from the town of Glover in the spring of 1883, and that the pauper had continued to reside in the town of Greensboro continuously until December, 1886, and that during this time neither the pauper nor his wife or family received any assistance from any town. The evidence of the defendant tended to show, however, that in the spring of 1886, and before the completion of the three years, the wife of the pauper took one of their three children, went to St. Johnsbury and there maintained herself from some time in March until the following August without any communication with or assistance from her husband, who, with the other children and their household effects, remained in the town of Greensboro; that in August the husband went for his wife and brought her home, and that they resided together from then until December, when they removed into the town of Craftsbury. The defendant claimed that if the wife left her husband in this manner before the expiration of the three full years, that would interrupt the running of the three years necessary to charge the town of Greensboro with the support of the wife and family, and asked that this question might be submitted to the jury. The court ruled otherwise and refused to submit the question to the jury, to which the defendant excepted.

The defendant claimed that its evidence tended to show

that previous to the time when the wife made application to the plaintiff town for assistance the husband had abandoned the wife and family, with the exception of one child, which he took with him, and had gone with this child into the town of Greensboro, where he continued to reside, maintaining himself and child from then on, and further claimed that if the wife had been abandoned at the time she applied for assistance for herself and family the defendant town could not be made chargeable by reason of the residence of her husband. The court ruled that the evidence of the defendant did not tend to show such abandonment and that if it did it would be immaterial, to which the defendant excepted.

The wife and family of O. A. Silver were actually being supported by the town of Craftsbury at the time No. 55, of the Acts of 1892, went into effect, and the defendant claimed that for this reason that act was unconstitutional as to those paupers, and moved the court to direct a verdict in its favor in respect of their support. This the court declined to do and the defendant excepted.

At the time the support sued for was furnished the family of William Graham, he was confined in the Orleans county jail upon civil process. It was conceded that he then had the requisite residence in the defendant town and that the defendant was liable in respect of the support furnished the members of his family proper. The defendant contended that it was not liable for the support furnished Elizabeth Graham for the reason that she was neither a member of William Graham's family, within the meaning of the statute, nor had she a residence in the town of Greensboro. Elizabeth Graham was the mother of William Graham. Her husband was dead and she had resided in the family of her son since before 1882. During all this time she had been a person of feeble health, and the evidence of the defendant tended to show that she had not during any three years of such time been capable of maintaining herself, but that she

had been maintained by her son, William. It was not' claimed that she had received assistance from any town, and the court ruled upon this testimony that Elizabeth Graham had supported herself within the meaning of the statute and that the defendant was liable for the assistance furnished her by the defendant, to which the defendant excepted.

*W. W. Miles* and *C. A. Prouty* for the defendant.

If Silver and his wife separated, and Mrs. Silver, taking one of their children, moved into an adjoining town and maintained herself, Silver could not be said to support himself and his family within the meaning of No. 55, Acts of 1892. The wife thereby began to acquire a new settlement which, if continued for three years, would have made the town of her residence chargeable with her support. *Bethel* v. *Tunbridge*, 13 Vt. 445; *Rupert* v. *Winhall*, 29 Vt. 245; *Royalton* v. *West Fairlee*, 11 Vt. 438; *Wilmington* v. *Jamaica*, 42 Vt. 694; *Winhall* v. *Landgrove*, 45 Vt. 376.

If the husband had in fact abandoned his family at the time they made application to the plaintiff for assistance the defendant cannot be made chargeable, for the paupers had no residence of their own in Greensboro, and they took no derivative residence from the father. *Brookfield* v. *Hartland*, 10 Vt. 424; *Marshfield* v. *Tunbridge*, 62 Vt. 455.

The paupers were actually being supported by the plaintiff town when No. 55, Acts of 1892, was passed, and they had acquired a vested right to be supported in that town which the legislature could not interfere with. Therefore, as to them, the act was unconstitutional, *Starksboro* v. *Hinesburgh*, 13 Vt. 215.

*Dickerman & Young* for the plaintiff.

The support of paupers is a police regulation entirely within the control of the legislature. No vested right is ac-

quired either by the pauper or by the towns among themselves. *Goshen* v. *Richmond,* 4 Allen 458; *Bridgewater* v. *Plymouth,* 97 Mass. 382-390; *Endicott* v. *Hopkinton,* 125 Mass. 521; *Cambridge* v. *Boston,* 130 Mass. 357; *Goshen* v. *Stonington,* 4 Conn. 209; *Lewiston* v. *No. Yarmouth,* 5 Greenl. 66.

The wife and children took a derivative settlement irrespective of statute, by virtue of the common law. *Cumner* v. *Milton,* 2 Salk. 528; *Woodened* v. *Paulspenny,* 2 Ld. Raymond, 1473; *Hoby* v. *Kingsbury,* 1 Strange 527; *Nymsfield* v. *Woodchester,* 2 Strange, 1172; *Paulsbury* v. *Wooeden,* 2 Str. 746; *King* v. *Eltham,* 5 East 113; *Eastwoodhey* v. *Westwoodhey,* 1 Str. 438; *King* v. *Offchurch,* 3 Term R. 116; *King* v. *Edgwoth,* 3 Term R. 353; *King* v. *Wilton,* 3 Term R. 354; *King* v. *Woburn,* 8 Term R. 479; *King* v. *Wilmington,* 5 B. & A. 525; *King* v. *Hardwick,* 5 B. & A. 176; *King* v. *Ritherfield Greys,* 1 B. & C. 345; *Bow* v. *Nottingham,* 1 N. H. 260; *Bath* v. *Haverhill,* 2 N. H. 555; *Tamworth* v. *Newmarket,* 3 N. H. 472; *Salisbury* v. *Orange,* 5 N. H. 348; *Landaff* v. *Atkinson,* 8 N. H. 532; *South Hampton* v. *Hampton Falls,* 11 N. H. 134; *Newton* v. *Stratford,* 3 Conn, 600; *East Hartford* v. *Middletown,* 1 Root 196; *Bozrah* v. *Stonington,* 4 Conn. 373; *Hebron* v. *Colchester,* 5 Day 169; *Sterling* v. *Plainfield,* 4 Conn. 114; *Danbury* v. *New Haven,* 3 Conn. 584; *Wells* v. *Westhaven,* 5 Vt. 322; *Londonderry* v. *Andover,* 28 Vt. 417; *Plymouth* v. *Windsor,* 7 Vt. 327; *Brookfield* v. *Hartland,* 10. Vt. 424; *Manchester* v. *Springfield,* 15 Vt. 385.

O. A. Silver was emancipated upon arriving at the age of majority. *Springfield* v. *Wilbraham,* 4 Mass. 493; *Andover* v. *Merrimack,* 37 N. H. 438; *Poultney* v. *Glover,* 23 Vt. 328; *Hardwick* v. *Pawlet,* 36. Vt. 320; *Westmore* v. *Sheffield,* 56 Vt. 239; *Topsham* v. *Chelsea,* 60 Vt. 219.

The three years was not interrupted by the fact of Mrs.

Silver maintaining herself separate from her husband for a portion of that time in another town. It is the duty of the wife to assist in the support of the family and she may do this either in connection with or apart from the husband. *Danville* v. *Wheelock*, 47 Vt. 57; *Tunbridge* v. *Norwich*, 17 Vt. 493.

The pauper supported himself within the meaning of the statute, although a portion of that support was furnished by his father as a matter of charity. *Tunbridge* v. *Norwich*, 17 Vt. 493; *Ludlow* v. *Landgrove*, 42 Vt. 137; *Topsham* v. *Chelsea*, 60 Vt. 219.

THOMPSON, J. In deciding this case, it is not necessary for this court to pass upon the question whether O. A. Silver was emancipated prior to his marriage in January, 1881. Not being *non compos*, the presumption is that he was emancipated upon attaining his majority. *Poultney* v. *Glover*, 23 Vt. 328; *Hardwick* v. *Pawlet*, 36 Vt. 320; *Westmore* v. *Sheffield*, 56 Vt. 239. But whatever may have been his relation to his father's family before his marriage, he certainly was emancipated by his marriage. All the authorities agree that marriage emancipates a child, even though a minor. *Bradford* v. *Lunenburg*, 5 Vt. 481; *Sherburne* v. *Hartland*, 37 Vt. 528.

In the spring of 1883, Silver removed with his wife to the defendant town, in which town they continued to reside until December, 1886, continuously, and for more than three years, except that in the spring of 1886, the wife took the youngest child and went to St. Johnsbury, and perhaps some other place, to work. While the wife was thus away, the husband and other child and their household furniture remained in Greensboro. The defendant claimed in the court below, that the evidence tended to show that before Mrs. Silver went to St. Johnsbury to work, she and her husband agreed to separate, she to take the youngest child and there-

after to support it and herself without assistance from him, and that acting under such agreement she went to St. Johnsbury, and perhaps some other places, as before stated. After a careful examination of the evidence, we are satisfied that the county court was correct in holding that it did not tend to prove such an agreement.

About August 1, 1886, Silver went for and brought his wife back to Greensboro, and they kept house together there until some time in December, 1886. From their marriage to the spring of 1886, the wife had worked out more or less, and thus earned a part of the means required for the support of their family. A part of this time they kept house, and some of the time they lived in the family of his father, who always lived in Greensboro. During the three years that Silver and his wife resided continuously in Greensboro from the spring of 1883 to December, 1886, they maintained themselves and their family with such aid as they received from his father, and they were not assisted by Greensboro nor any other town. The defendant does not claim that O. A. Silver did not reside continuously in Greensboro, maintaining himself during that time, but it insists that he did not support his family within the meaning of St. 1892, No. 55, s. 1. The words "supporting himself and family," in this statute, are synonymous with the words "maintains himself and family," as found in R. L., s. 2811, clause 8, and other statutes relating to paupers in which the latter phrase is used. In construing the words, "maintains himself and family," it was said in *Tunbridge* v. *Norwich*, 17 Vt. 493:

"It is not to be inferred from the expression ' and family,' in the statute, that a man, in order to change his settlement under this provision of the statute, must have a family, or that he must necessarily have maintained himself and family or himself, if he have no family, independent of all aid from any source whatever besides his own personal labor and services. This would be an unreasonable, not to say an absurd construction. But the meaning of the statute un-

doubtedly is that he shall maintain himself, or himself and family if he have one, *so that neither shall become chargeable to any town for support.*  But if the man or his family should receive presents, or if either should inherit property, or if the family should maintain him, instead of his maintaining the family, as is sometimes the case, it would not prevent the change of settlement.  All that is necessary is that he should have his permanent domicile for seven consecutive years, in the second town, and keep himself and family from becoming chargeable to either town.  If some of his family are with friends, visiting or boarding, or if some of them abandon him or are abandoned by him, but still do not become a public charge, it will not prevent the operation of the residence to change the settlement."

To the same effect is *Danville* v. *Wheelock*, 47 Vt. 57, and *Topsham* v. *Chelsea*, 60 Vt. 219.  Following this construction, we hold that A. O. Silver supported himself and family within the terms of the St. 1892, No. 55, during the three years that he lived continuously in Greensboro.

The defendant also contends that the evidence tended to show that Silver had abandoned his wife and the children with her at the time they became a charge upon the plaintiff town, and that that question should have been submitted to the jury.  There was no error in refusing to submit this question.  The evidence had no tendency to prove such an abandonment.  Again, the St. 1892, No. 55, expressly provides that

"If a person is poor and in need of assistance for himself or family, it shall be the duty of the overseer of the poor of any town when application for such assistance is made to relieve such person or his family, and if such person has not resided in such town for three years, supporting himself and family, and is not of sufficient ability to provide such assistance, the town so furnishing assistance may recover the expense of such assistance from the town where *such person* last resided for the space of three years, supporting himself and family."

Thus, by the terms of the statute, the burden of supporting Silver's family as well as himself, when poor and in

38

need of assistance, is cast upon the defendant town. The statute in this respect is free from ambiguity.

The defendant also urges that, because the paupers were actually being supported by the plaintiff, at the time it went into effect, and they were then chargeable to plaintiff, the St. 1892, No. 55, is unconstitutional and void, in that it impaired a vested right of the paupers. The defendant fails to point out any provision of the constitution of this state or of the United States which this statute contravenes. Rules for the settlement of paupers have always been regarded as matters of mere positive or arbitrary regulation, in establishing which the legislature is limited in its power only by its own perception of what is proper and expedient. A pauper has no vested right in respect to how or where he shall be supported, nor has a town a vested right to be relieved from the charge of supporting any particular pauper. *Goshen* v. *Richmond*, 4 Allen 458; *Bridgewater* v. *Plymouth*, 97 Mass. 382; *Endicott* v. *Hopkinton*, 125 Mass. 521; *Cambridge* v. *Boston*, 130 Mass. 357; *Goshen* v. *Stonington*, 4 Conn. 209, 10 Am. Dec. 121; *Lewiston* v. *No. Yarmouth*, 5 Greenl. 66; *Worcester* v. *East Montpelier*, 61 Vt. 139. The court below correctly overruled defendant's motion to have a verdict directed in its favor on the ground that this statute was unconstitutional.

It follows from what has already been said that Elizabeth Graham supported herself within the meaning of the statute during all the time she resided in Greensboro, and that the defendant is liable to the plaintiff for the aid furnished to her and to the family of William Graham.

This disposes of all the questions made by the defendant in argument.

*Judgment affirmed.*

Start, J., being engaged in county court, did not sit.