## ST. JOHNSBURY v. WATERFORD.

MAY TERM, 1895.

*Pauper. Emancipation. Residence.*

1.  A person helpless in body, but with normal mental faculties, is presumed to become emancipated upon attaining his majority, although he continues to reside in his father's family.

2.  A three years' residence of this character is sufficient to charge a town with the support of the person as a pauper, although the father actually supported him, provided no aid was furnished by any town.

Assumpsit to recover expenses incurred in the support of a pauper. Heard upon an agreed statement of facts at the December term, 1894, Caledonia county, MUNSON, J., presiding. Judgment for the plaintiff. The defendant excepts.

The plaintiff sued for the support of one Esther Cushman from March 16, 1893, to the date of the writ, October 4, 1894. The material part of the agreed statement of facts was as follows:

"The pauper, Esther Cushman, is sixty-eight years of age, and from her infancy has been physically perfectly helpless; mentally, she is a bright woman. She lost the use of her hands, feet and limbs in her infancy, and never regained them. She was born in Waterford, where her family was then living. About forty-six years ago her father deserted his family, then living in Waterford, and never returned to it, and died about eighteen years since. His wife, the mother of the pauper, with the aid of a son, Ezra Cushman, for some years kept up the home and supported her there without aid from any town.

4I

"In 1853 a sister of Esther married a Mr. Hurlbutt, and the mother and Esther went to reside with them on a farm in Waterford as members of the family.   There the family resided for about one year, and then moved to a farm in Danville.   About twenty years ago the family moved to St. Johnsbury, where Mrs. Hurlbutt's husband deserted her, about twelve years since.   At these removals from Waterford to Danville and from Danville to St. Johnsbury, Esther and her mother accompanied Mrs. Hurlbutt, and in all said residences made up a part of the family.   The pauper needed the care and nursing of the mother, and was never separated from her but two weeks down to the time her mother died, about five years ago.   The defendant town for a time before the pauper removed from Waterford to Danville—that is, from some time in 1851—paid a certain sum per year to the head of the family in which the pauper was supported toward Esther's support, and all contracts were made by the town yearly and paid each quarter.   While Mrs. Hurlbutt's husband was at home contracts were made with him for the pauper's support, and payments were made to him.   After he deserted his home the defendant contracted with Mrs. Hurlbutt each year and paid her each three months.   The amount thus paid to Mrs. Hurlbutt and to the others named before her was not enough, in fact, to pay the actual cost of the pauper's support, but to enable the family to keep her with them.   While the pauper was residing with Mrs. Hurlbutt's family in the town of Danville, and while temporarily away visiting, she was either carried or went voluntarily to the poor farm of the defendant town.   It does not appear who, if any one, carried her there.   After the pauper had been at the poor farm, or elsewhere, about two weeks, her mother became uneasy about her, and sent Mr. Hurlbutt to bring her back to their home at Danville ; and the pauper ever after remained as a part of Mrs. Hurlbutt's family down to the bringing of this suit, March 16, 1892. The defendant town contracted with Mrs. Hurlbutt to keep the pauper, as she had done, for the coming year in her family, and agreed to pay each three months.   It did so down to and including the fourth quarter ending March 16th, 1893, when defendant's overseer notified Mrs. Hurlbutt that the town would not any longer pay for the pauper's aid or support, and that it was under no legal obligation to do so.

"The pauper was being supported to the extent and in

the manner aforesaid at the time when she was removed from Waterford and at the time when she came to St. Johnsbury, as well as at all other times since the defendant began to pay toward her support.    The removal of the Hurlbutt family, including Esther and her mother, from Waterford to Danville and from Danville to St. Johnsbury, were made without the procurement of or interference or objection by the defendant town and with the intention on the part of Mrs. Hurlbutt to reside in the town to which the removal was made.    The removal to St. Johnsbury was made about 1872, and ever since then the family has lived in St. Johnsbury, and Esther has been supported in the manner hereinbefore stated.

" Esther was supported by her father until he deserted his family, as before stated, and thereafter was supported by her mother and brother until the year 1851, and until the defendant town began to aid in her support in that year, and until the defendant town so began to furnish aid no aid was furnished towards her support by any town.    Esther was born and always lived there until the removal to Danville, as before stated."

*Bates & May* for the defendant.

The pauper was not emancipated and never acquired a three years' residence in her own right.    *King* v. *Roach,* 5 T. R. 247;  *Wells* v.  *Westhaven,* 5 Vt. 326;  *Lowell* v. *Newport,* 66 Me. 78;  *Rowell* v.  *Vershire,* 62 Vt. 405; *Durfee* v. *South Burlington,* 65 Vt. 412;  *Marshfield* v. *Tunbridge,* 62 Vt. 455;  *Craftsbury* v. *Greensboro,* 66 Vt. 585;  *Londonderry* v. *Landgrove,* 67 Vt. 264.

*W. P. Stafford* for the plaintiff.

The pauper never supported herself in the plaintiff town, but was always assisted by the defendant.    Hence she was transient, and her last three years' residence was in the defendant town.    *Leicester* v. *Brandon,* 65 Vt. 544;  *Sandgate* v. *Rupert,* 67 Vt. 258.

She was emancipated.    Her mental faculties were perfect and she could choose where she would live.    *Topsham* v. *Chelsea*, 60 Vt. 220 ;  *Westmore* v. *Sheffield*, 56 Vt. 239.

ROSS, C. J.    The pauper, Esther Cushman, is normal, intellectually, in understanding, and in will power.    Physically, she is helpless, having lost the use of her hands, feet and limbs in her infancy.    After attaining her majority she is presumed to have become emancipated and to have chosen her place of residence, unless the contrary is shown.    *Ludlow* v. *Landgrove*, 41 Vt. 137 ;  *Westmore* v. *Sheffield*, 56 Vt. 239 ; *Hardwick* v. *Pawlet*, 36 Vt. 320.  The pauper continued to reside in her father's family about four years after attaining her majority, as she had done before.    The agreed case does not state that she was unemancipated during this period, nor that such residing was not from her will and choice.    There is not a fact stated to show that her residence was controlled by the will of the father, against her will.    She was helpless, and needed the care and nursing of her mother.    These facts are not inconsistent with emancipation during this period.    Notwithstanding these facts, her residence during this period in her father's family, in Waterford, may have been, and doubtless was, in accordance with her choice, wish and judgment.    The county court was not required to make any finding of fact, nor inference, from the facts agreed upon.    In 1848, when she was twenty-one years old, the father deserted his family and never returned to it.    This act was a relinquishment and abandonment of all care and control of the pauper.    From 1848 to 1851, the pauper continued to reside in Waterford, as she had done from her birth, but in the family of her mother and brother.    The mother and brother were never entitled to the control of the pauper, nor under a legal obligation to support her.    She is presumed to have resided with them from choice.    That the father, for the first four

years, and the mother and brother, for the remaining period, furnished her support, inasmuch as she was unaided by the town, did not defeat her from gaining a three years' residence in Waterford.   *Craftsbury* v. *Greensboro*, 66 Vt. 585.   In 1851 the town of Waterford commenced to aid in supporting the pauper, and continued that aid until March 16, 1893, when the plaintiff town was called upon and commenced to support her.   The pauper then had resided in Waterford, continuously, more than three full years, supporting herself within the meaning of the statute. . She never resided in any other town for three full years supporting herself within the meaning of the law.   While in Danville and while in St. Johnsbury, to March 16, 1893, the town of Waterford contributed to her support.  The last and only three years' residence of the pauper in her own right being in Waterford, it was the legal duty of that town, so far as regards the plaintiff, to continue to support her.

*Judgment affirmed.*